UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

D.L., et al.,                          )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )        Case No. 4:17 CV 1773 RWS
                                       )
ST. LOUIS CITY PUBLIC SCHOOL           )
DISTRICT                               )
                                       )
            Defendant.                 )

## MEMORANDUM AND ORDER

Plaintiff D.L. moves for an amended judgment, [No. 48], of my order

granting in part his motion for judgment on the administrative record. [No. 42].

D.L. also moves for reimbursement of tuition expenses. [No. 59]. I ordered the

defendant St. Louis School District to reimburse D.L. for costs incurred in his

separate private school placement, but only for the time when his public school

placement had no history of, or preparation for, autism-related educational

supports. [No. 42]. D.L.'s parents argue that I should have granted reimbursement

for the entirety of his enrollment in the private school placement. Because the

Individuals with Disabilities Education Act (IDEA) gives me broad authority to

grant relief consistent with the equities in this case, and the equitable

considerations weigh against granting reimbursement for the whole period of

D.L.'s enrollment, I will deny D.L.'s motion for an amended judgment.

# BACKGROUND

Minor Plaintiff D.L. brings this case appealing a ruling from the Missouri Administrative Hearing Council (AHC). D.L. is an 11-year old boy (at the time of filing) who has been medically diagnosed with autism, post-traumatic stress disorder (PTSD), disruptive mood regulation, encopresis and enuresis. In my order granting judgment on the administrative record, [No. 342], I concluded that D.L.'s November 2016 Individualized Education Plan (IEP) was not reasonably calculated to provide him with a free and appropriate public educate (FAPE) as required by the IDEA. The IEP in question reduced his occupational therapy time and placed him in a separate public school named Madison.

In taking these actions, the IEP contradicted four years of previous IEPs concerning D.L.'s need for sensory supports. At the time of this recommended placement, Madison no history of providing autism-related educational supports, and its program director Marvin Echols had no experience teaching students with autism. (Hearing Transcript, ECF No. 27-27 at 495). By the time the state due process hearing was held (April 6, 2018), Madison had created a sensory room to meet the sensory-seeking needs of students with autism. (Id. at 501), and three students with a medical diagnosis of autism were enrolled at Madison. (Id. at 474). Based on these facts, I concluded that D.L.'s IEP was not reasonably calculated to

provide FAPE for the period when Madison had no autism-related sensory supports.

Plaintiff D.L. now moves for an amended judgment. His parents and next friends the Landons argue that no equitable considerations, or enumerated instances under 20 U.S.C. § 1412(a)(10)(C)(iii), justify a denial or reduction of D.L.'s reimbursement award. They seek reimbursement for D.L.'s placement in a separate private school, Giant Steps, from December 2016 through the present day and an order that D.L. should remain in his private placement.

## LEGAL STANDARD

### I.     Motion to Amend Judgment

The IDEA gives me "broad authority to grant appropriate relief," when I find that an IEP was not reasonably calculated to provide FAPE. Forest Grove Sch. Dist. v. T.A., 557 U.S. 230, 239, (2009). The statute specifies that when an IEPA is inadequate, I "may require the agency to reimburse the parents for the cost" of an appropriate private school enrollment. 20 U.S.C. § 1412(a)(10)(C)(ii). The statute also allows me to reduce or deny reimbursement in certain enumerated instances. § 1412(a)(10)(C)(iii). Complementary to these statutory factors, "equitable considerations are relevant in fashioning relief, and [I] enjoy[] broad discretion" in applying those considerations. Florence Cty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7, 16, (1993) (citations omitted).

# ANALYSIS

In support of their motion to amend judgment, the Landons focus on the enumerated considerations provided in § 1412(a)(10)(C)(iii). Pursuant to § 1412(a)(10)(C)(iii), I may reduce or deny reimbursement if the parents failed to provide adequate notice of their intent to make a private school placement, if they refused to make their child available for an evaluation, or if they acted unreasonably. The Landons argue that 1) they provided adequate notice of their intent to remove D.L. from the district, 2) they never refused to make D.L. available for the District's evaluation, and 3) they did not act unreasonably when they placed D.L.at Giant Steps.

These enumerated considerations are not the only important equities to consider. See Florence Cty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7, 16. Other equities may include "the cost of the private placement and its impact on the school district's budget," id., whether the arrangement with the school was fraudulent or collusive, see E.M. v. New York City Dep't of Educ., 758 F.3d 442, 461 (2d Cir. 2014), the parties respective willingness to constructively participate in the IEP meeting, see Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1183 (9th Cir. 2009) ("Thus, in the district court's opinion, Parents participated in the December 2005 IEP process not to help ASD prepare to provide their child with a FAPE, but merely as a prelude to seeking reimbursement."), and

the availability of need-based scholarships, <u>see</u> <u>E.M. v. New York City Dep't of Educ.</u>, 758 F.3d at 461, among other factors.

Important equitable considerations in this case include (1) the District's willingness to update the IEP at the Landons' request, (2) the parent's lack of communication with the District as it developed the November 2016 IEP, (3) Madison's improvement of autism supports over time, and (4) the cost of the private placement.

First, the District's past actions demonstrated a willingness to revise the IEP when requested. In addition to D.L.'s annual IEPs, the District created updated IEPs that reflected new developments in June 2014 and November 2016. The District also offered to update D.L.'s IEP in September 2016, but the meeting was cancelled after D.L. was enrolled in a private school named Great Circle. In this circumstance, it is clear that the District was willing to make adjustments to provide a free and appropriate public education in consultation with the parents.

Second, the IDEA calls for parties to work on resolving parents' concerns, even after a complaint is filed. See <u>Park Hill Sch. Dist. v. Dass</u>, 655 F.3d 762, 767 (8th Cir. 2011). In the Eighth Circuit's reading, "[t]he IDEA mandates that parents, after filing a due process complaint, meet with the school district to 'discuss their complaint, and the facts that form the basis of the complaint,' and to provide 'the opportunity to resolve the complaint." <u>Id.</u> (citing 20 U.S.C.A.

§ 415(f)(1)(B)(i)(IV)). No such pre-hearing resolution attempt was made by the parents. On the contrary, when the District requested data from the Landons to develop the IEP, the Landons failed to respond entirely. (AHC Decision, ECF No. 27-23 at 22).

During the subsequent months, the District made improvements to the autism-related educational supports available at Madison. Specifically, it created a sensory room and enrolled three students with a medical diagnosis of autism. (Hearing Transcript, ECF No. 27-27 at 474, 501). These improvements did not meet every recommendation made by D.L.'s treating physician, Dr. Constantino. However, the FAPE standard is not measured by what the court thinks is "ideal," but rather what is "reasonably calculated" to provide FAPE. Endrew F. ex rel. Joseph F. v. Douglas Cty. Sch. Dist. RE-1, 137 S. Ct. 988, 999, (2017). Further, the Landons and the District had been able to reach compromises in the past, and the District had an incentive to reach compromise quickly: it could be liable for tuition payments close to $5,000 per month. This cost of private school placement is a relevant factor when ordering reimbursement, despite plaintiff's attempt to limit the weight of this factor. Florence Cty. Sch. Dist. Four v. Carter By & Through Carter, 510 U.S. 7, 15–16.

For all these reasons, I find that the equities favor ordering reimbursement only for the period during which Madison had no history of or preparation for

autism-related educational supports. The District's actions show that it was prepared to amend the IEP—and improve Madison's autism-related educational supports—in a timely manner to resolve the Landons' concerns. As in Park Hill School Dist. v. Dass, "[t]here was time for ongoing planning, and the District took advantage of that opportunity,"[1] to improve the educational environment and supports it was able to offer the student. 655 F.3d 762, 767. Under the IDEA, the District should have "the opportunity to address the problem" after it receives notice of the parent's intent to challenge the adequacy of an IEP. Id. While the District strove to address the Landons' concerns in a timely manner, the Landons failed to take other steps to resolve the dispute and improve the IEP except as required to bring their complaint.[2] C.f. Ashland Sch. Dist. v. Parents of Student E.H., 587 F.3d 1175, 1183 (holding that perfunctory participating in an IEP process suggested parents were unlikely to place their student in a public school "even if the IEP was adequate"). As a result, a reduction in the reimbursement

---

[1] Although courts "typically examine the IEPs from the perspective of the time when they were written," the Eighth Circuit has focused on the time between the complaint and the hearing when judging the parties' willingness to address alleged inadequacies in an IEP. Park Hill Sch. Dist. v. Dass, 655 F.3d 762, 767 (8th Cir. 2011).

[2] I do not question that Landons' commitment to use their own time and resources to find the best placement for D.H. within a procedurally-demanding law. They have demonstrated that commitment repeatedly. At the same time, I repeat the AHC Hearing's finding that the Landons decided that they did not want D.H. to attend Madison before they made their visit to Madison on November 16, 2016. (ECF No. 27-23 at 22). Furthermore, they had prepared a letter rejecting the District's public placement and seeking a private placement at public expense even before the IEP meeting was held. (Id.)

award is appropriate, and I will deny the Landons' motion to amend my previous order.

## II.     Motion for Reimbursement

To assist me in calculating the appropriate reimbursement total, I ordered the parties' to submit evidence and arguments demonstrating the appropriate amount of costs for D.L.'s private school placement. [No. 42]. Plaintiff submitted invoices from Giant Steps, but neither party submitted evidence concerning the date when Madison acquired a sensory room or other autism-related educational supports. The ACH hearing in this matter was held on April 5 and 6, 2017, the case was ready for decision on April 26, 2017, and the AHC Commission issued a decision on May 9, 2017. Acknowledging the uncertain timing of improvements to Madison, and the importance of educational stability over the course of a school year, I will order reimbursement from the date of D.L.'s enrollment in Giant Steps through the end of the 2016-2017 schoolyear at Giant Steps. According to Plaintiffs' submitted invoices, their expenses for the 2016-2017 schoolyear were twenty seven thousand one hundred fifty seven and 50/100 dollars ($27,157.50).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to amend my previous order, [No. 48], is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff's motion for relief for

reimbursement, [No. 49], is **GRANTED** in part and **DENIED** in part. The plaintiff's motion is granted to the extent that it seeks reimbursement for school year 2016-2017 tuition in the amount of TWENTY SEVEN THOUSAND ONE HUNDRED FIFTY SEVEN AND 50/100 DOLLARS ($27,157.50) plus prejudgment interest.

Dated this 9th day of October, 2018.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE